UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL W. BROWN,

        Petitioner,

    v.                          CASE NO. 03-CV-73247-DT
                                    HONORABLE ARTHUR J. TARNOW

DAVID SMITH,

        Respondent.

_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Michael W. Brown has filed an application for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state court convictions for criminal sexual conduct. Petitioner alleges that prosecutorial misconduct, ineffective assistance of counsel, and the cumulative effect of errors deprived him of his constitutional right to a fair trial. Because the Court finds no merit in Petitioner's claims, the habeas petition is denied.

### I. Background

### A. State Court Proceedings

Petitioner was charged in Midland County, Michigan with two counts of first-degree criminal sexual conduct, *see* MICH. COMP. LAWS § 750.520b(1)(b) (sexual penetration with a person at least 13 years of age, but less than 16 years of age), and one count of second-degree criminal sexual conduct, *see* MICH. COMP. LAWS §

750.520c(1)(b)(sexual contact with a person at least thirteen years of age, but less than

sixteen years of age). The charges arose from allegations that Petitioner fondled and

sexually penetrated his fourteen-year-old daughter. The defense theory was that the

complainant fabricated the allegations of sexual abuse to prevent her father from

marrying his girlfriend Jane, whom the complainant disliked. On March 30, 2000, a

Midland County Circuit Court jury convicted Petitioner as charged.

The trial court sentenced Petitioner to concurrent terms of ten and one-half to

twenty-five years in prison for the first-degree criminal sexual conduct convictions and

seven and one-half to fifteen years for the second-degree criminal sexual conduct

conviction. The Michigan Court of Appeals affirmed Petitioner's convictions, but

remanded the case for a hearing on the scoring of offense variable 7 of the sentencing

guidelines. *See People v. Brown*, No. 227953 (Mich. Ct. App. Jan. 3, 2003).[1] On June

30, 2003, the Michigan Supreme Court denied leave to appeal. *See People v. Brown*, 468

Mich. 940; 664 N.W.2d 217 (2003) (table).

On remand, the trial court held a hearing, but declined to modify either the scoring

of offense variable 7 or the sentence. Petitioner appealed, but the Michigan Court of

Appeals upheld the trial court's scoring of offense variable 7. *See People v. Brown*, No.

251712 (Mich. Ct. App. Mar. 15, 2005). On October 31, 2005, the Michigan Supreme

---

[1] Judge Peter D. O'Connell voted to affirm the trial court's decision on all issues in the case. He dissented from the majority's decision to remand the case to the trial court, because he believed that Petitioner's actions supported the scoring of the sentencing guidelines.

Court denied leave to appeal.  *See People v. Brown*, 474 Mich. 903; 705 N.W.2d 116

(2005) (table).

## B.  Federal Court Proceedings

Petitioner filed a *pro se* application for the writ of habeas corpus on August 26,

2003.  After the respondent filed an answer to the habeas petition, Petitioner requested

assistance of counsel, and the Court appointed an attorney to represent him.  Petitioner

then moved for a copy of the complainant's counseling records.  The Court held a hearing

on the motion and ultimately reviewed the records *in camera* and made them available to

counsel for Petitioner and the respondent.  Petitioner recently filed a supplemental brief

through counsel.

## II.  Standard of Review

Section 2254(d) of Title 28, United States Code, imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an
>       unreasonable application of, clearly established Federal law,
>       as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>       determination of the facts in light of the evidence presented in
>       the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id*. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id*. at 411.

### III.  Discussion

### A.  The Procedurally Defaulted Claims about the Prosecutor

The first habeas claim alleges prosecutorial misconduct.  Petitioner contends that the prosecutor injected and argued other-acts evidence, vouched for his witnesses, elicited testimony on issues broader than the guilt or innocence of the accused, and injected irrelevant testimony.  Respondent contends that these claims are barred by Petitioner's failure to object to the prosecutor's conduct during trial.

4

### 1. Procedural Default

A procedural default is "a critical failure to comply with state procedural law. . . ."

*Trest v. Cain*, 522 U.S. 87, 89 (1997). Generally,

> federal courts may not consider procedurally defaulted claims. *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000). A claim is procedurally defaulted if: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state courts actually enforced the procedural rule; and (3) the state courts' finding of noncompliance is an adequate and independent state ground for denying relief on the federal constitutional claim. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986).

*Cone v. Bell,* 359 F.3d 785, 789 (6th Cir. 2004), *reversed on other grounds*, 543 U.S. 447 (2005). Federal courts may consider a procedurally defaulted claim only if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The state procedural rule in question here is Michigan's contemporaneous-objection rule. It requires defendants to make a timely and specific objection to prosecutorial misconduct at trial in order to preserve the claim for appellate review. *People v. Schutte*, 240 Mich. App. 713, 720; 613 N.W. 2d 370, 377 (2000), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004). Petitioner violated this rule by not objecting to four of his five claims about the prosecutor. The Michigan Court of Appeals enforced the procedural rule as follows:

> Apart from defendant's claim concerning the prosecutor's remark

about the inadmissibility of hearsay evidence, none of the alleged claims of
misconduct were preserved with an appropriate objection at trial.  These
unpreserved issues are forfeited unless defendant can shown a plain error
(i.e., one that is clear or obvious) affecting his substantial rights.

*Brown*, Mich. Ct. App. No. 227953, at 1.

The contemporaneous-objection rule was an adequate and independent ground for

denying relief because it was firmly established and regularly followed before Petitioner's

trial.  *See People v. Carines*, 460 Mich. 750, 761-64; 597 N.W.2d 130, 137-38 (1999);

*People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994).  Therefore, in order

for this Court to consider the substantive merits of Petitioner's procedurally defaulted

claims, he must establish "cause and prejudice" or a miscarriage of justice.

## 2. Cause

Petitioner alleges in claim two that his trial attorney was "cause" for the failure to

object to the prosecutor's conduct.  Constitutionally ineffective assistance of counsel is

"cause" for a procedural default.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Willis v.

Smith*, 351 F.3d 741, 745 (6th Cir. 2003).

[A] counsel's failure to object to prosecutorial misconduct constitutes
defective performance when that failure is due to clear inexperience or lack
of knowledge of controlling law, rather than reasonable trial strategy.  *See,
e.g., Graveley v. Mills*, 87 F.3d 779, 785-86 (6th Cir. 1996); *Rachel v.
Bordenkircher*, 590 F.2d 200, 204 (6th Cir. 1978).

[E]ven if counsel's performance is deemed deficient, a defendant
must show that those deficiencies were prejudicial to the defense.  *See
Strickland* [*v. Washington*, 466 U.S. 668, 692 (1984)].  To make this
showing, the defendant must demonstrate that there "is a reasonable

probability that, but for counsel's unprofessional errors, the result of the
proceeding would have been different. A reasonable probability is a
probability sufficient to undermine confidence in the outcome." *Id*. at 694.
The essential question is "whether better lawyering would have produced a
different result." *McQueen* [*v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir.
1996)] (quoting *Ward v. United States*, 995 F.2d 1317, 1321 (6th
Cir.1993)).

*Washington v. Hofbauer,* 228 F.3d 689, 702 (6th Cir. 2000). In the following paragraphs
the Court considers whether defense counsel's failure to object to the prosecutor's
conduct amounted to constitutionally ineffective assistance.

### a. Other Acts

Petitioner alleges that the prosecutor elicited "other acts" testimony that Petitioner
was violent and physically abusive to his ex-wife, his fiancee, and other people. The
prosecutor also alluded to Petitioner's violent behavior during his rebuttal argument.

Evidence of Petitioner's propensity for violence was relevant because it explained
why the complainant delayed reporting Petitioner's abusive conduct toward her. Any
prejudice to the defense was mitigated by the trial court's jury instruction that the jurors
should not convict Petitioner simply because they thought that he was guilty of other bad
conduct.

Even if Petitioner could establish "cause" for the failure to object to "other acts"
evidence, the Court would have to conclude that the claim lacks merit.

There is no clearly established Supreme Court precedent which holds that a
state violates due process by permitting propensity evidence in the form of
other bad acts evidence. . . . While the Supreme Court has addressed

7

whether prior acts testimony is permissible under the Federal Rules of
Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston
v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the
issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir.), *cert. denied sub nom Bugh v.

Bradshaw*, 540 U.S. 930 (2003). Because there is no Supreme Court decision holding

that the admission of similar acts evidence violates the Constitution, the state court's

decision cannot be deemed "contrary to" Supreme Court precedent under AEDPA. *Id.*

### b. Vouching

Petitioner contends that the prosecutor vouched for two of his witnesses when he

stated that the witnesses were impartial, had no agenda, and were not hired guns. The

witnesses in question were Lois Fanslow, a children's protective services worker who

testified that the complainant informed her about Petitioner's sexually abusive behavior,

and Lisa Donahue-Smith, a mental health counselor who testified as an expert witness on

incestuous relationships and family dynamics.

Prosecutors may not vouch for the credibility of their witnesses or express a

personal opinion regarding the defendant's guilt. *United States v. Young*, 470 U.S. 1, 17-

18 (1985). Courts frown on this conduct because

such comments can convey the impression that evidence not presented to
the jury, but known to the prosecutor, supports the charges against the
defendant and can thus jeopardize the defendant's right to be tried solely on
the basis of the evidence presented to the jury; and the prosecutor's opinion
carries with it the imprimatur of the Government and may induce the jury to
trust the Government's judgment rather than its own view of the evidence.

*Id*. at 18-19.

The prosecutor, however, did not insinuate that he knew something the jurors did not know or that he was relying on information not admitted in evidence. The disputed comments were a response to defense counsel's attempt to discredit the witnesses' testimony. The prosecutor was "entitled to wide latitude in rebuttal argument" and to "fairly respond to arguments made by defense counsel." *Angel v. Overberg*, 682 F.2d 605, 607-08 (6th Cir.1982) (*en banc*) (citing *Donnelly v. Christoforo*, 416 U.S. 637 (1974)).

The prosecutor's argument did not prejudice the defense, because Lisa Donohue-Smith's testimony was general and theoretical. She admitted that she did not know either Petitioner or the complainant and she did not interview any witnesses in the case. Lois Fanslow's testimony was more damaging to the defense, but it was similar to other evidence that the jury heard. The Court therefore concludes that the prosecutor's remarks about Donohue-Smith and Fanslow were not so flagrant that defense counsel was ineffective for not objecting to them.

### c. Testimony Concerning Sexual Assaults on Family Members

Petitioner argues that the prosecutor appealed to the jurors for a conviction in order to stem the tide of domestic sexual abuse. One basis for this claim was Lisa Donahue-Smith's testimony that 80% of sexually abused children are abused by someone they know and that the abuser usually is a relative. Another basis for Petitioner's claim is the

prosecutor's closing argument that

> [n]o one ever likes to even think of sexual assault occurring under these circumstances, a father against a daughter; but as you can see from the testimony, it happens all too often.

(Tr. at 413.)

Prosecutors may not make statements designed to arouse the jury's passions or prejudice. *Viereck v. United States*, 318 U.S. 236, 247 (1943). Ms. Donahue-Smith's testimony about abused children was a response to the prosecutor's question as to why a victim would delay reporting a sexual assault. The prosecutor's subsequent comment about sexual assaults among family members was a brief and isolated remark acknowledging why this case was a difficult one. The prosecutor did not encourage the jurors to convict Petitioner as a means of putting an end to domestic violence. Moreover, the trial court charged the jurors not to let sympathy or prejudice influence their decision. Defense counsel's failure to object to Donohue-Smith's testimony and to the prosecutor's comment did not amount to ineffective assistance of counsel.

### d. Petitioner's Girlfriend

Petitioner claims that the prosecutor elicited irrelevant testimony when he asked the complainant about Petitioner's plans to marry the ex-wife of his former brother-in-law. Petitioner contends that the testimony injected in evidence an issue broader than the guilt or innocence of the accused and that the jury might have perceived the relationship as incestuous.

The prosecutor appears to have been trying to establish that the complainant knew and liked Petitioner's girlfriend Jane and that the complainant had no reason for not wanting Petitioner to marry Jane. Because there was nothing incestuous about Petitioner's relationship with Jane and because there was a proper reason for eliciting the testimony, defense counsel's failure to object was not ineffective assistance.

### 3. Summary

The prosecutor's conduct and comments were not so flagrant as to distract the jurors from deciding the question of Petitioner's guilt or innocence. Consequently, trial counsel's failure to object to the alleged misconduct did not amount to ineffective assistance. Petitioner has not met the *Strickland* standard and, therefore, he has failed to show "cause" to excuse the procedural bar that precludes habeas review of his prosecutorial-misconduct claims. *Hinkle v. Randle*, 271 F.3d 239, 246 (6th Cir. 2001).

The Court need not determine whether Petitioner has demonstrated the requisite prejudice because he has not shown "cause" to excuse his procedural default. *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Willis v. Smith*, 351 F.3d at 746. The remaining question is whether the Court's failure to consider the substantive merits of Petitioner's defaulted claims will result in a miscarriage of justice.

The narrow exception for fundamental miscarriages of justice requires the habeas applicant to demonstrate that the alleged constitutional error has probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*,

541 U.S. 386, 388 (2004); *Murray v. Carrier*, 477 U.S. at 496. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Petitioner has not supported his claims with any new and reliable evidence of actual innocence, and the testimony at trial was sufficient to establish Petitioner's guilt. Accordingly, a miscarriage of justice will not occur as a result of the Court's decision not to adjudicate the substantive merits of Petitioner's procedurally defaulted claims of prosecutorial misconduct.

## B. The Prosecutor's Comment on Hearsay Evidence

Petitioner alleges that the prosecutor misstated the law and disparaged defense counsel by stating that the defense attorney had presented worthless and inadmissible hearsay evidence. This claim is not procedurally defaulted because defense counsel objected to the prosecutor's comment. However, to obtain habeas relief, Petitioner must show that the alleged misconduct infected the trial with such unfairness that the resulting conviction amounted to a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd v. Collins,* 209 F.3d 486, 529 (

12

6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)).

The comment in question concerned defense witness Brad Dexter, who investigated the complaint against Petitioner and interviewed the complainant. The prosecutor stated during his rebuttal argument that any testimony Detective Dexter could give would be hearsay because Dexter was not present during the alleged sexual abuse. The prosecutor also said that, when defense counsel placed Dexter on the stand, he elicited hearsay, which the prosecutor defined as other people's out-of-court statements.

Although the prosecutor failed to explain that some hearsay is admissible, the prosecutor did not disparage defense counsel for producing Dexter. *Cf. United States v. Young*, 470 U.S. 1, 9 (1985) (explaining that attorneys may not "make unfounded and inflammatory attacks on the opposing advocate"). Nor did he encourage the jury to disregard what Dexter had said. His remarks were a response to defense counsel's rhetorical question as to why the prosecutor had not called Detective Dexter as a witness. Furthermore, the trial court instructed the jurors that evidence included the sworn testimony of witnesses. The prosecutor's comments about hearsay testimony were not so unfair or prejudicial as to deprive Petitioner of due process.

## C.  Trial Counsel

Petitioner alleges next that his trial attorney deprived him of his constitutional right to effective assistance. The Supreme Court's decision in *Strickland* "qualifies as 'clearly established Federal law'" for purposes of evaluating ineffective-assistance-of-counsel

claims. *Williams v. Taylor*, 529 U.S. at 391. Pursuant to *Strickland*, Petitioner must

demonstrate that his attorney's performance was deficient and that the deficient

performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Petitioner "must show

that counsel's representation fell below an objective standard of reasonableness." *Id*. at

688. He also must show "a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is

a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

"Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at

689. Because of the difficulties inherent in evaluating defense counsel's performance, "a

court must indulge a strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance; that is, the defendant must overcome the

presumption that, under the circumstances, the challenged action 'might be considered

sound trial strategy.'" *Id*. (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

## 1. Prior Consistent Statements

The prosecutor introduced evidence that the complainant's allegations of sexual

abuse were consistent with information that she provided to her mother, a friend, a

protective services worker, and the police. Petitioner alleges that his attorney should have

objected to the evidence or moved *in limine* to exclude the hearsay on the ground that the

prior consistent statements were made after the motive to fabricate arose.

Even assuming that the evidence was improper under state law, defense counsel

was able to show that the same factor which motivated the complainant's trial testimony (her dislike for Petitioner's girlfriend Jane and her desire to prevent Petitioner from marrying Jane) existed when she made at least two of the prior statements. For example, defense counsel elicited testimony from the complainant's mother that the complainant did not like Jane and that the mother had harbored some doubts about whether the complainant was truthful when she talked to the police.

Defense counsel also elicited testimony from the complainant's friend that the complainant did not like Jane and that the friend was surprised by the complainant's allegations about her father. Defense counsel elicited additional testimony that the complainant might have made the allegations about her father at the time when Jane's divorce became final. Defense counsel's decision to elicit evidence supporting the defense theory, as opposed to objecting to evidence of prior consistent statements, was reasonable trial strategy.

## 2. Petitioner's Silence

Petitioner alleges that his attorney should not have elicited testimony from Lois Fanslow, the protective services investigator, that Petitioner refused to speak with Fanslow and that Fanslow found the refusal to be very unusual. Petitioner contends that Fanslow's testimony amounted to opinion evidence that Petitioner was guilty.

Fanslow's remarks were made in response to defense counsel's question whether she normally interviewed a suspect during her investigations. Fanslow answered that she

generally did interview the suspect, but Petitioner had refused to meet with her on the advice of his attorney. When counsel subsequently asked whether it was typical in this type of case not to talk to an investigator pursuant at an attorney's advice, Fanslow answered, "It happens very seldom. This is probably the second or third time over all the years that I have been doing investigations that the alleged perpetrator has not met with me." (Tr. at 325.)

Defense counsel cannot be held responsible for the unsolicited comment that Petitioner refused to speak with Fanslow or for the unexpected answer that suspects seldom refuse to meet with investigators. To the extent that defense counsel's performance was deficient, any prejudice to the defense was minimized by the fact that Fanslow said Petitioner refused to see her *on the advice of counsel*. Furthermore, the trial court instructed the jury that Petitioner was not required to testify, to prove his innocence, or to do anything. There is not a reasonable probability that the disputed comments affected the outcome of the trial.

### 3. Failure to Investigate and Present an Alibi Defense

Petitioner alleges next that his attorney failed to investigate and elicit evidence that he went out of town on the Friday afternoon when the crimes allegedly occurred. Petitioner contends that this evidence would have created a reasonable doubt as to guilt.

Although defense attorneys are expected "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," *Strickland*,

466 U.S. at 691, the complainant did not specify the date or time of the crimes. Lois

Fanslow testified that the complainant informed her that the charged crimes occurred

during the weekend of March 6, 1999, and the complainant testified that the incident

could have occurred on a Friday afternoon. Petitioner therefore concludes that the date in

question was Friday, March 5, 1999. He has attempted to reconstruct the events on that

day based on the complainant's testimony about her usual after-school routine. He asserts

that, although the complainant's testimony put him at home around 6:00 p.m., he was

picking up his son in Lansing, a 75-minute drive away, late that afternoon.

Petitioner claims that his ex-wife could have verified the fact that he picked up

their son on Friday afternoon, March 5, 1999. His ex-wife's statement, however, is not

notarized, and it does not state whether Petitioner actually picked up his son on the first

weekend in March of 1999. It also does not say when Petitioner arrived at his ex-wife's

home. It merely states that Petitioner usually arrived between 5:30 and 6:30 p.m. on

alternate weekends and that Friday afternoon, March 5, 1999, would have been a

weekend when Petitioner picked up their son for visitation.

Even if Petitioner could have established that the complainant was referring to

Friday, March 5, 1999 as the date of the assault, the crimes could have occurred after the

complainant arrived home from school and before Petitioner left home to pick up his son.

Defense counsel was not ineffective for failing to present evidence that Petitioner went

out of town on the afternoon of March 5, 1999.

### 4. Failure to Investigate and Produce the Complainant's Counselor

Petitioner contends that his attorney failed to investigate and call Nancy Rachow Parsons, who was the complainant's mental health counselor. Petitioner claims that Ms. Parsons would have contradicted the complainant's testimony and could have expressed an opinion on the complainant's truthfulness.

Ms. Parsons attested to Petitioner's character in a letter that she wrote to the trial court after the trial. Ms. Parsons also suggested in her letter that the complainant was pitting one parent against the other parent and was jealous of her father's girlfriend.

In another letter, which is dated December 6, 2000, and is addressed 'To Whom It May Concern," Ms. Parsons stated that the complainant did not like her father's girlfriend and that she (Ms. Parsons) was prepared to testify about matters that had a direct bearing on the validity of the complainant's allegations concerning Petitioner. Ms. Parsons intimated that Petitioner's attorneys were negligent for not calling her as a witness after she alerted them that she possessed relevant and confidential information about the complainant and was willing to testify in Petitioner's behalf. *See* Letter "To Whom It May Concern" dated Dec. 6, 2000.

Petitioner could have used Ms. Parsons as a character witness and to show that the complainant was not entirely truthful at trial when she claimed that she liked Jane and that she was bothered only a little bit by Jane's relationship with her father. Petitioner was entitled to attempt to impeach the complainant's credibility, *see Davis v. Alaska*, 415

U.S. 301 (1974), and the complainant's statements to Ms. Parsons would have been admissible for that purpose, despite the statutory psychologist-patient privilege. *People v. Adamski*, 198 Mich. App. 133, 134-40; 497 N.W.2d 546, 547-550 (1993). The Court therefore agrees that defense counsel should have investigated what Ms. Parsons had to say about the complainant. Counsel could not have evaluated or weighed the risks and benefits of calling Ms. Parsons as a witness without so much as contacting her and determining what she would say if called. *Towns v. Smith*, 395 F.3d 251, 260 (6th Cir. 2005).

The remaining question is whether the deficient performance prejudiced the defense. When an attorney fails to present evidence, the question is whether the evidence which was not revealed, "might well have influenced the jury's appraisal of [Petitioner's] culpability" and whether "the likelihood of a different result if the evidence had gone in is sufficient to undermine confidence in the outcome actually reached . . . ." *Rompilla v. Beard*, 543 U.S. 374, __, 125 S. Ct. 2456, 2469 (2005) (internal citations and quotation marks omitted).

To his credit, defense counsel cross-examined the complainant about a number of things that brought her credibility into question. Defense counsel elicited testimony from the complainant that Petitioner spent less time with her after he began seeing Jane, that Petitioner ignored her when she talked to him, and that he was more of a disciplinarian than her mother. Defense counsel also elicited testimony that: (1) the complainant did

19

not inform her grandfather, a protective services worker, or a detective that Petitioner had been touching her inappropriately; (2) she did not mention other incidents of inappropriate behavior when she testified under oath in other proceedings; (3) she revealed those incidents for the first time two weeks earlier when she informed the prosecutor about them; and (4) she informed a friend that she did not want her dad to get married.

Furthermore, if defense counsel had disclosed the complainant's comments to Ms. Parsons, the prosecutor likely would have pointed out that the complainant also informed Ms. Parsons that: (1) Petitioner had molested her; (2) the complainant's cousin and friend had observed Petitioner hit and fondle the complainant; (3) Petitioner had threatened to kill the complainant if she told anyone about his conduct; (4) she thought that Petitioner was trying to make her to say nothing had happened; (5) she was afraid sometimes; (6) Petitioner had "smacked her" and hit Jane; and (7) she had tried to hide Petitioner's abusive behavior when she had bruises. In addition to this evidence, the prosecutor might have elicited from Ms. Parsons the fact that the complainant never made any inconsistent statements and that she did not recant any of her initial statements. *See* Petition for Writ of Habeas Corpus, Affidavit of Geoffrey K. Rettig (the prosecuting attorney in the case). The prosecutor concluded that Ms. Parsons had no exculpatory evidence about Petitioner, other than her personal opinion. *See id.*

Calling Ms. Parsons as a witness would have entailed some risks. Although she

might have been a good character witness for Petitioner, she also could have provided evidence favorable to the prosecution on cross-examination. The Court's confidence in the outcome of the trial is not undermined by defense counsel's failure to investigate and present Ms. Parsons as a witness.

### 5. Failure to Object

Petitioner alleges that his trial attorney should have objected to Lisa Donahue-Smith's testimony that 80% of sexual abuse victims are victimized by a family member. Petitioner contends that such testimony from a person who was qualified as an expert witness for the prosecution was equivalent to accusing him of being guilty.

Ms. Donahue-Smith's testimony was admissible to explain why young victims delay reporting a sexual assault by a relative. *See People v. Peterson*, 450 Mich. 349, 352-53; 537 N.W.2d 857, 859 (1995) (holding that "an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim . . . ."). Furthermore, as previously noted, Ms. Donahue-Smith admitted that she did not know Petitioner or the complainant, did not treat them, did not elicit any statements from the complainant, and did not prepare any reports on the case. Therefore, defense counsel was not ineffective for failing to object to Ms. Donohue-Smith's comment.

### 6. Misleading the Jury

Petitioner alleges that his trial attorney misled the jury by asking a witness to read only a portion of her investigative report regarding what the complainant had said to her. The witness was Lois Fanslow, a child protective services worker who testified for the prosecution. Defense counsel asked Ms. Fanslow on cross-examination to read aloud a small portion of her report. In response, Ms. Fanslow read: "[The complainant] stated that this is the only time her father has done something like this to her." (Tr. at 326.)

The prosecutor pointed out on re-direct examination that defense counsel had asked Ms. Fanslow to stop reading in the middle of a sentence and that the complainant also stated that Petitioner sometimes said inappropriate things about her body. Petitioner claims that revelation of the complainant's complete comment undermined defense counsel's credibility and portrayed counsel as someone who was willing to mislead the jury.

The prosecutor, however, did not make any disparaging remarks about defense counsel's tactic, and no further mention was made about the incident. Moreover, the complainant and her friend testified that Petitioner touched the complainant in inappropriate ways or made inappropriate comments about her body. Therefore, revelation of the complainant's full remarks to Ms. Fanslow was not the only evidence of this kind, and defense counsel's allegedly deficient performance did not prejudice the defense.

## 7.  Failure to Present Evidence

Petitioner alleges that his trial attorney should have presented evidence that his penis is bent and has a dark mole on it.  He claims that evidence of these distinguishing characteristics and the fact that the complainant did not mention them would have created a reasonable doubt as to whether sexual misconduct occurred.

The complainant testified at the preliminary examination that she did not recall any marks or scars on Petitioner's penis, but she was not sure if she would have noticed them.[2]  The Court agrees with the Michigan Court of Appeals that, not asking the fifteen-year-old complainant about the distinguishing characteristics of her father's genitalia was sound trial strategy.  The jury might have been offended at the question, and the traumatic experience could have explained why the complainant might not have noticed any distinguishing features.  Defense counsel's failure to elicit the evidence did not constitute deficient performance.

## 8.  Failure to Object to Nonverbal Conduct

Petitioner contends that his attorney should have objected to Lois Fanslow's testimony that there is no need to keep a protective services file open or to take a victim out of the home when an abusive caretaker is no longer living in the household. Petitioner asserts that the nonverbal conduct of closing a case file was inadmissible

---

[2]  The Court is relying on the state court's opinion for this information, because the transcript of the preliminary examination is not part of the record before the Court.

hearsay.

In Michigan, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Mich. R. Evid. 801(c). "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Mich. R. Evid. 801(a).

The Michigan Court of Appeals determined that the decision to close a protective services file was not a statement and therefore did not qualify for exclusion under the hearsay rules. "[S]tate courts are the ultimate expositors of state law ," *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975), and "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, __ U.S. __, __, 126 S. Ct. 602, 604 (2005). Furthermore, as the Michigan Court of Appeals recognized, there could be several reasons for closing a protective services file, including lack of evidence. Therefore, defense counsel's failure to object did not constitute deficient performance.

### 9. Failure to Object to the Prosecutor's Conduct

Petitioner alleges that his attorney failed to properly and consistently object to prosecutorial misconduct. The Court addressed this claim in its discussion of Petitioner's claim about the prosecutor. For the reasons given there, defense counsel's performance was not deficient and did not prejudice the defense.

### 10.  Failure to Object to a Jury Instruction

Petitioner claims that his attorney should have objected to the trial court's jury instruction on reasonable doubt, because the instruction did not state that a guilty verdict requires proof to a moral certainty and that a reasonable doubt is one which would cause a reasonable and prudent person to hesitate to act in the important affairs of life.

The Constitution does not require any particular form of words to be used in advising a jury on the burden of proof "so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (internal citation omitted).  The trial court instructed the jurors that Petitioner was presumed innocent and was entitled to a verdict of not guilty unless they were satisfied beyond a reasonable doubt that Petitioner was guilty.  The court also explained that the prosecutor had to prove each element of the crime beyond a reasonable doubt and, if he did not, they must find Petitioner not guilty.  The trial court defined reasonable doubt as :

> a fair, honest doubt growing out of the evidence or lack of evidence.  It is not merely an imaginary or possible doubt, but a doubt based on reason and common sense.  A reasonable doubt is just that -- a doubt that is reasonable, after a careful and considered examination of the facts and circumstances of this case.

(Tr. at 480.)

The jury instructions adequately informed the jurors of the prosecutor's burden of proof, and the United States Court of Appeals for the Sixth Circuit has approved the jury

instruction used in this case.  *See Binder v. Stegall*, 198 F.3d 177 (6th Cir. 1999).

Therefore, defense counsel's failure to object to the instruction on reasonable doubt was

not deficient performance.

### 11.  Failure to Investigate and Review the Sentencing Guidelines

Petitioner's final claim about his trial attorney is that the attorney failed to

investigate and object to the scoring of offense variable 7 of the sentencing guidelines.

Even if defense counsel's performance was deficient, the deficient performance was not

prejudicial, because the Michigan Court of Appeals remanded Petitioner's case to the trial

court for a hearing on the scoring of the offense variable.  On rehearing, the trial court

declined to change the scoring of the offense variable or the sentence.

### 12.  Summary of Claims

For all the reasons given above, defense counsel's performance either was not

deficient or did not prejudice the defense.  Therefore, the state court's conclusion that

defense counsel was not ineffective was an objectively reasonable application of

*Strickland*.

### D.  Appellate Counsel

Petitioner states that his first appellate attorney failed to move for re-sentencing

and failed to file a timely motion to remand for a hearing on all meritorious issues

regarding trial counsel.  The omission of a "dead-bang winner" amounts to ineffective of

appellate counsel. *United States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995) (citing *Page v. United States*, 884 F.2d 300, 302 (7th Cir. 1989)).[3] However, an appellate attorney need not raise every nonfrivolous argument on appeal if counsel decides not to present those arguments as a matter of professional judgment. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Petitioner's first attorney may have been remiss in failing to raise all of Petitioner's claims, but Petitioner's subsequent appellate attorney moved for re-sentencing and to remand the case for a hearing on Petitioner's claims about trial counsel. The Michigan Court of Appeals denied both motions, yet adjudicated the claims about trial counsel on their merits and remanded the case for a hearing on the scoring of offense variable 7. On remand, the trial court imposed the same sentence.

Petitioner has failed to show that his first appellate attorney's performance was deficient and that the allegedly deficient performance prejudiced the appeal. He is not entitled to relief on the basis of his claim about appellate counsel.

---

[3] A "dead-bang winner"

is an issue which was obvious from the trial record, *see e.g., Matire v. Wainwright*, 811 F.2d 1430, 1438 (11th Cir. 1987) (counsel's failure to raise issue which 'was obvious on the record, and must have leaped out upon even a casual reading of [the] transcript' was deficient performance), *and* one which would have resulted in a reversal on appeal.

*United States v. Cook*, 45 F.3d at 395 (emphasis in original).

### E.  Cumulative Effect of Errors

The fourth and final habeas claim alleges that the cumulative effect of trial errors requires a new trial.  This claim has no merit because "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."  *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).  Therefore, it cannot be said that the state court's decision was contrary to any Supreme Court decision so as to warrant habeas relief under § 2254(d).

### IV.  Conclusion

The state court's adjudication of Petitioner's claims did not result in a decision that was contrary to, or an unreasonable application of, any Supreme Court decision.  Therefore, Petitioner is not entitled to habeas corpus relief, and his application for a writ of habeas corpus is **DENIED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  September 18, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 18, 2006, by electronic and/or ordinary mail.

s/Catherine A. Pickles
Judicial Secretary